ALLEN *v.* KENDALL HARDWARE MILL SUPPLY CO.

1. MASTER AND SERVANT—LOANED EMPLOYEE— POWER TO CONTROL.
   In determining whether relationship of master and servant existed between employee and regular employer or between employee and third party to whom employee had been allegedly loaned, the test is whose work was being done, and in determining that question the power to control the work is of great importance.

2. SAME—RIGHT TO CONTROL.
   Where master hires or lends servant to another for particular work and resigns control over servant while performing that work, he ceases to be servant of original master and becomes servant of one to whom he is hired or lent.

3. SAME—SPECIAL SERVICE FOR ANOTHER.
   A servant in the general employment of one person may also become the special servant of another, with all the mutual rights and obligations of master and servant between them for the time of, and in relation to, the special service in which the servant is temporarily engaged.

4. Workmen's Compensation—Loaned Servant—Right of Control—Question of Fact.

In dependents' proceeding to recover workmen's compensation, question of whether decedent, an employee of hardware company which had sold pump to buyer and which had directed its employee to assist pump manufacturer's representative in getting pump to work, was an employee subject to control of hardware company or manufacturer was a question of fact for determination by department of labor and industry in imposing liability for accidental death of employee (2 Comp. Laws 1929, § 8451).

5. Same—Loaned Employee—Pump Manufacturer.

Employee of hardware company which had directed him to assist pump manufacturer's representative as a helper in getting pump recommended by manufacturer to ·develop rated capacity, and which employee was subject to direction and control of manufacturer's representative who was in direct charge of the work when employee was killed, was an employee of the manufacturer; hence manufacturer was liable for workmen's compensation.

6. Same—Finding by Department—Evidence.

Finding of fact by department of labor and industry, supported by competent evidence, may not be disturbed by Supreme Court on appeal (2 Comp. Laws 1929, § 8451).

Boyles, C. J., and Chandler and North, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 6, 1943. (Docket No. 31, Calendar No. 42,047.) Decided April 6, 1943. Rehearing denied June 7, 1943.

Edna M. Allen, wife, and Clark Allen, minor son, of Leon Allen, deceased, presented their claim against Kendall Hardware Mill Supply Company and Fairbanks, Morse & Company, employers, and Hardware Mutual Casualty Company and Liberty Mutual Insurance Company, insurers, for compensation for death of decedent. From order awarding compensation, Fairbanks, Morse & Company and Liberty Mutual Insurance Company appeal. Affirmed.

*Kerr, Lacey & Scroggie,* for Fairbanks, Morse & Company and Liberty Mutual Insurance Company, defendants and appellants.

*Sessions & Warner,* for Kendall Hardware Mill Supply Company and Hardware Mutual Casualty Company, defendants and appellees.

SHARPE, J.    This is an appeal from the department of labor and industry.    Plaintiffs are the widow and minor son of Leon Allen who sustained fatal injuries on May 20, 1941, while working on a water pump on the farm of Emmett Lee.

The deceased was a regular employee of the Kendall Hardware Mill Supply Company at its store at Marshall, Michigan, receiving $15 a week for such employment.    Prior to the above date, the Kendall Hardware Mill Supply Company sold Mr. Lee a pump which it had previously purchased from the manufacturer, Fairbanks, Morse & Company.    The Kendall Hardware Mill Supply Company also sold Mr. Lee a tank and pipe with which Fairbanks, Morse & Company had no connection.    Mr. Lee installed the pump, but was unable to make it develop more than one half of its rated capacity.    This fact was made known to Mr. Snyder, the manager of the Marshall branch of the hardware company, who in turn informed Mr. Anderson, a salesman of Fairbanks, Morse & Company, of the difficulty.    Mr. Anderson contacted one Aubrey Camp and instructed him to go to the Lee farm and find out what was wrong with the pump.    It was agreed that the hardware company would send a man out to the Lee farm to help Camp with the pump.    Mr. Allen was chosen by the hardware company to act as a helper to Mr. Camp.    During the progress of the work, Mr. Allen was fatally injured.    A claim for compensation was filed by the widow and her minor

son. An award was made in behalf of plaintiffs of compensation at the rate of $10 per week as well as other expenses. The department of labor and industry held that Fairbanks, Morse & Company was liable for such payments.

The principal question for determination is whether the relationship of master and servant existed between Kendall Hardware Mill Supply Company and Allen, or between Fairbanks, Morse & Company and Allen. As was said in *Buskirk* v. *Ide,* 302 Mich. 154, 165: "The ultimate test is: Whose is the work being done? * * * In determining whose work is being done, the question of the power to control the work is of great importance." It is urged by the hardware company that it loaned Allen to Fairbanks, Morse & Company as a helper on this particular job.

In *Rockwell* v. *Grand Trunk Western Railway Co.,* 253 Mich. 144, 147, we said:

"It is a well-settled rule of law that when one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent. In determining whose servant he was the test is, who had the right to control him."

In *Janik* v. *Ford Motor Co.,* 180 Mich. 557, 561 (52 L. R. A. [N.S.] 294, Ann. Cas. 1916A, 669), we said:

"The rule is long settled that a servant in the general employment of one person may also become the special servant of another, with all the mutual rights and obligations of master and servant between them for the time of, and in relation to, the special service in which the servant is temporarily engaged."

The record shows that Emmett Lee, the prospective purchaser, contacted Anderson of Fairbanks, Morse & Company and took him out to his farm for the purpose of being advised by Anderson as to what kind of a pump to purchase; that Anderson advised Lee what type of Fairbanks, Morse & Company pump to use; that the pump recommended by Anderson was installed by Lee; that Fairbanks, Morse & Company was advised that the pump did not work satisfactorily; that Anderson hired Aubrey Camp to fix the pump; and that it was agreed that the hardware company would furnish a man to aid Camp in performing his work. It also appears that Camp was in charge of the work and Allen was his helper. Applying the rule announced by the above authorities, we find that Fairbanks, Morse & Company was in direct charge of the work upon the pump; and that Allen as a helper was under the supervision and control of Camp, its employee. Under such circumstances we find that Allen had temporarily ceased to be an employee of the hardware company. He was directed and controlled by Fairbanks, Morse & Company and under these circumstances was an employee of Fairbanks, Morse & Company.

We are in accord with the finding of the department of labor and industry:

"Thus we have a situation in which the Kendall Hardware Mill Supply Company loaned one of its regular employees to the Fairbanks, Morse & Company and put him under the immediate control of its agent to work on equipment owned by them, as a result of which that employee was fatally injured."

The right to control the loaned employee presents a question of fact which was resolved in favor of the Kendall Hardware Mill Supply Company. There

is competent evidence to support the determination
of the department of labor and industry. Under
such circumstances we may not disturb the finding
so made. See 2 Comp. Laws 1929, § 8451 (Stat.
Ann. § 17.186).

The award is affirmed, with costs to plaintiffs as
against Fairbanks, Morse & Company.

Starr, Wiest, Butzel, and Bushnell, JJ., con-
curred with Sharpe, J.

Boyles, C. J. (*dissenting*). I do not agree that
Allen was an employee of Fairbanks, Morse & Com-
pany at the time of the accident. The undisputed
evidence shows that he was still an employee of
Kendall Hardware Mill Supply Company. The
proofs established the following facts:

Allen was a full-time employee of the Kendall
Hardware Company, as a general laborer. Kendall
Hardware Company's general manager (Snyder)
testified that he "assigned" Allen "to help on this
pump installation * * * I sent him out to help on
this pump installation." Kendall Hardware Com-
pany paid him for his day's work on the date of the
accident. The pump that was being installed was one
that had been sold by Snyder for the Kendall Hard-
ware Company. It was not the property of Fair-
banks, Morse & Company as the department found.
Allen was injured while helping to remove the pipe
from the well. This pipe had been sold by Kendall
Hardware Company, and Fairbanks, Morse & Com-
pany had never owned the pipe, sold it, or had any
duty to remove it. At the time of the accident,
Allen "was assisting Mr. Camp." Mr. Camp was
hired by Fairbanks, Morse & Company by the hour
for this particular job to try to make the pump
work. On the day before the accident, Anderson

(Fairbanks-Morse agent) had asked Camp "to go out there and see if I (Camp) could tell what was the matter with the pump." Camp worked at it the day prior to and for two or three weeks after the accident. Camp charged for the three weeks' time he spent, billed Fairbanks, Morse & Company for it, Fairbanks, Morse & Company paid the bill, and it was later paid by Kendall Hardware Company, as a charge-back from Fairbanks, Morse & Company. Allen was paid directly by Kendall Hardware Company as its employee, not as Camp's employee. The bill contained several charges for a helper for Camp, but none for Allen as a helper.

The gist of the matter is, that this was a Fairbanks-Morse pump that did not work at the rated capacity, the manufacturer took on the responsibility of making it work or replacing it, and the Kendall Hardware Company, having sold the pump, furnished a helper in trying to make it work. Allen was under the general direction and control of Snyder for Kendall Hardware Company all the time, worked for that company every weekday from 7:00 a. m. to 6:00 p. m., including the day he was injured, at $15 per week, was told by Snyder where to go and what to do, up to the time of his death. Neither Camp nor Fairbanks, Morse & Company hired Allen, selected him for the work, could tell him when to work, or discharge him. It is true that while Allen was helping Camp, he (Camp) told Allen what to do. On the day of the accident, Allen was under the immediate control of Camp, who testified:

"*Q.* And when he (Allen) came on the job what did you do so far as instructing him what to do or not to do?

"*A.* Well, I didn't really instruct him. I just told him what we had to do and we went ahead and done it; that was all."

However, Snyder (for Kendall Hardware Company) did not resign full control over Allen while acting as a helper for Camp. The relation of employer and employee was not suspended. Under our previous decisions, as a matter of law Allen was still the employee of Kendall Hardware Company. In *Rockwell* v. *Grand Trunk Western R. Co.,* 253 Mich. 144, cited by my Brother Sharpe, the operator of the crane that caused plaintiff's injuries was the general servant of the Grand Trunk Western Railway Company, was selected by the railway company, paid by the railway company, could be discharged by the railway company whenever it pleased. He was held to be the servant of the railway company, although at the time of the accident his acts which resulted in the plaintiff's injuries were under the immediate direction of another. The railway company was held liable. In the above respects the railway company occupied the same position as Kendall Hardware Company in the instant case, where Allen was the general servant of the hardware company, selected by the hardware company, and could be discharged by the hardware company whenever it pleased. In the case at bar, as in the railway case, the mere fact that acts of the servant were under the immediate temporary direction of another does not establish that the servant was the employee of such other person.

"But to avoid liability the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of another. * * *

"If the servant remains subject to the general orders of the man who hires and pays him, he is still his servant, although specific directions may be given him by another person from time to time as to

the details of the work and the manner of doing it."
*Rockwell* v. *Grand Trunk Western R. Co., supra.*

In *Powell* v. *Twin Drilling Co.*, 300 Mich. 566, this
court recently held:

"To entitle plaintiff to compensation, he must
have been in the employ of defendant at the time of
the accident, under a contract of hire, express or im-
plied.  2 Comp. Laws 1929, § 8413, as amended by
Act No. 204, Pub. Acts 1937, and Act No. 107, Pub.
Acts 1939 (Comp. Laws Supp. 1940, § 8413, Stat.
Ann. 1941 Cum. Supp. § 17.147).  It is fundamental
in this type of proceeding that before plaintiff can
recover, the relationship of employer and employee
must be admitted or proved.  *Lynch* v. *R. D. Baker
Construction Co.*, 297 Mich. 1."

The facts are undisputed, and hence the record
presents no factual issue for determination—in-
stead, the issue is as to the status of plaintiff as a
matter of law.  The finding of law of the department
that Allen was an employee of Fairbanks, Morse &
Company at the time of the accident should be set
aside, and the case should be remanded for entry of
an order granting compensation against defendant
Kendall Hardware Mill Supply Company and its
insurer, with costs.

CHANDLER and NORTH, JJ., concurred with
BOYLES, C. J.